## Case No. 446.

### ANONYMOUS.

[1 Haz. U. S. Reg. (1839,) 87.]

WITNESS—COMPETENCY—ATHEIST.

## Case No. 447.

### ANONYMOUS.

[Hempst. 413; 1 West. Law J. 246.]

Circuit Court, D. Missouri. Sept., 1843.

CRIMES IN INDIAN COUNTRY—PLACES WITHIN EXCLUSIVE JURISDICTION OF UNITED STATES.

[1. The act of 1790, § 8, "for the punishment of certain crimes," provides among other things that murder or robbery committed on the high seas or on any river, etc., out of the jurisdiction of any particular state shall be punished with death. Other sections of the act provide for the punishment of crimes not including robbery committed within any place under the sole and exclusive jurisdiction of the United States. The act of 1834, § 35, "to regulate trade and intercourse with the Indian tribes," extends to the Indian country so much of the laws of the United States as relates to the punishment of crimes committed within any place within the sole and exclusive jurisdiction of the United States. *Held*, that since the rivers and other places mentioned in Act 1790, § 8, are not within the exclusive jurisdiction of the United States, robbery committed in the Indian country is not punishable with death under that section, but as larceny under other sections of the act.]

[2. Under treaties with the Indian tribes securing to them local self-government the Indian country is not within the exclusive jurisdiction of the United States.]

[The following charge to the grand jury was delivered in response to a request for instructions as follows: "Is robbery, when committed in the Indian country, indictable as such, and punishable with death?"]

WELLS, District Judge. Is robbery committed in the Indian country attached to the district of Missouri a crime indictable as such, and punishable with death? The 25th section of the act of 1834, "to regulate trade and intercourse with the Indian tribes, and to preserve peace on the frontiers," provides, "that so much of the laws of the United States as provides for the punishment of crimes committed within any place within the sole and exclusive jurisdiction of the United States, shall be in force in the Indian country." If robbery committed in "a place within the sole and exclusive jurisdiction of the United States," be punishable with death, then, if committed in the Indian country, it is also punished with death, and not otherwise.

The 16th clause of the 8th section of the 1st article of the constitution provides that congress shall have power "to exercise exclusive legislation in all cases whatsoever over such district, not exceeding ten miles square, as may by cession of the particular states and the acceptance by congress become the seat of government of the United States, and to exercise the like authority over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dockyards, and other needful buildings." Here is a grant of "exclusive legislation" which is jurisdiction, and here we are to look for the grant of sole and exclusive jurisdiction as to places, to the United States. U. S. v. Bevans, 3 Wheat. [16 U. S.] 386. The 3d section of the act of 1790, "for the punishment of certain crimes against the United States," (1 Stat. 112) provides, "that if any person or persons shall, within any fort, arsenal, dockyard, magazine, or in any other place or district of country under the sole and exclusive jurisdiction of the United States, commit the crime of wilful murder, such person or persons, on being thereof convicted shall suffer death." Other sections provide for other offences committed in the same places, but nowhere provide for the crime of robbery committed in these places, that is, in "forts, arsenals, dockyards, magazines, or in any other place or district of country within the sole and exclusive jurisdiction of the United States." Here is the exercise by congress of the grant of exclusive jurisdiction, "as to places," given by the clause of the constitution above cited; and the terms, "any other place or district of country," refer to territorial objects of a similar character to those enumerated. U. S. v. Bevans, supra.

The constitution (article 1, § 8) gives congress the power "to define and punish piracies and felonies committed on the high seas, and other offences against the law of nations." Here there is no grant of sole and exclusive jurisdiction as to place; for everybody knows that the high seas are common to all nations, and that every nation punishes crimes committed thereon. 1 Kent, [Comm.] 186, 187.

"The judicial power shall extend to all cases of admiralty and maritime jurisdiction." Const. art. 3, § 2. Here is no grant of sole and exclusive jurisdiction as to place, although there may be as to certain crimes. U. S. v. Bevans, supra, is in point, and Chief Justice Marshall, in delivering the opinion of the court in that case, says: —"Can the cession of admiralty and maritime jurisdiction be construed into a cession of the waters on which these cases may arise? This is a question on which the court is incapable of feeling a doubt. The article which describes the judicial power of the United States is not intended

for the cession of territory, or of general jurisdiction. It is obviously designed for other purposes. It is in the 8th section of the 1st article we are to look for cessions of territory and of exclusive jurisdiction over this district, and over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dockyards, and other needful buildings."

In extending the judicial power in all cases of admiralty and maritime jurisdiction, the 8th section of the act of 1790 provides, "that if any person or persons shall commit upon the high seas, or upon any river, haven, basin, or bay, out of the jurisdiction of any particular state, murder or robbery, or any other offence which, if committed within the body of a county, would by the laws of the United States be punishable with death; or if any captain or mariner of any ship or vessel shall piratically or feloniously run away with such ship or vessel, or any goods or merchandise, to the value of fifty dollars (the section enumerates other piracies), every such offender shall be deemed, taken, and adjudged to be a pirate and felon, and being thereof convicted, shall suffer death. And the trial of crimes committed on the high seas, or in any place out of the jurisdiction of any particular state, shall be in the district where the offender is apprehended, or into which he may be first brought." 1 Stat. This is the section which it is alleged is in force in the Indian country, and by the provisions of which it is said robbery there committed is punishable with death. If the places mentioned in this section be within the sole and exclusive jurisdiction of the United States, then it is in force in the Indian country. But it is the place, and not the crime, which is required to be within the sole and exclusive jurisdiction of the United States.

If this 8th section be but the exercise by congress of the power of extending the judicial power to all cases of admiralty and maritime jurisdiction, the matter, as I conceive, is decided by the case of U. S. v. Bevans, 3 Wheat. [16 U. S.] 336, above alluded to; for if, as shown, that grant of power was not intended to give exclusive jurisdiction as to places, then congress could not extend it to that length. And if it be not founded on that power, I confess I am wholly at a loss to know on what clause or provision of the constitution it is based; for, as already shown, if founded on the power to define and punish piracies and felonies on the high seas, and other offences against the law of nations, it would be absurd to claim the sole and exclusive jurisdiction as to the place there mentioned, that is, the high seas. But I think it can be shown that the 8th section of the act of 1790 was not intended by congress to apply to any crimes but piracies; that none of the places mentioned in that section are within the sole and exclusive juris-

diction of the United States, or so declared to be; and that the 25th section of the act of 1834 meant, by "any place within the sole and exclusive·· jurisdiction of the United States, and the laws for the punishment of offences committed therein," the forts, arsenals, magazines, dockyards, and other needful buildings, and the provisions of the act of 1790 applicable thereto.

The crime of robbery, as already mentioned, is not included in any of the provisions for the punishment of crimes committed in "any fort, arsenal, magazine, dockyard, or other place within the sole and exclusive jurisdiction of the United States." Larceny is included, and I presume every robbery includes a larceny. But larceny is not punishable by these provisions with death. In no part of the act of 1790 are "the high seas, or rivers, havens, basins, or bays, out of the jurisdiction of any particular state," spoken of, considered, or treated as places within the sole and exclusive jurisdiction of the United States; whereas the forts, arsenals, magazines and dockyards, places on land, are always enumerated and spoken of as the places within the sole and exclusive jurisdiction of the United States. Nor are the rivers, havens, basins, or bays, out of the jurisdiction of any particular state, ever spoken of as including the internal watercourses of our territories, or of any country, but always as the seas or the high seas, which would wholly exclude the idea of their being internal waters. Thus the 6th section provides for the punishment of misprision of felony "upon the high seas, or within any fort, arsenal, dockyard, magazine, or other place or district of country under the sole and exclusive jurisdiction of the United States." The 7th section provides for the punishment of manslaughter, when committed in any "fort, arsenal, dockyard, or other place or district of country under the sole and exclusive jurisdiction of the United States." The 8th section provides for the punishment of piracy, which includes murder, robbery, &c., "upon the high seas, or in any river, haven, basin, or bay, out of the jurisdiction of any particular state." The 9th section provides for the punishment of any piracy or robbery aforesaid, or any act of hostility against the United States, or any citizen thereof, by a citizen of the United States, under color of a commission from a foreign state, &c., "upon the high seas." The 10th section provides for the punishment of accessories "upon the land or the seas." The 11th section provides for the punishment of accessories after the fact "upon the land or at sea." The 12th section provides for the punishment of manslaughter "upon the high seas." The 13th section provides for the punishment of maiming "within any of the places upon land under the sole and exclusive jurisdiction of the United States, or upon the high seas." The 15th section provides for the punishment of larceny and

other offences "within any of the places under the sole and exclusive jurisdiction of the United States, or upon the high seas."

It will thus be seen, the "rivers, harbors, basins, and bays out of the jurisdiction of any particular state," "the high seas," "at sea," &c., in all this statute, seem to mean the same thing. And this is the English statute law and common law. For rivers, harbors, basins, bays, &c. out of the limits of any particular country, are generally denominated "high seas" or "sea" (2 Chit. Crim. Law, 891, 1127; 2 Hale, [P. C.] 12, 16), and are within the admiralty jurisdiction. Not but that there is a distinction, correctly speaking, between "high seas" and "seas," but the distinction is nice, and not frequently attended to. The supreme court has decided, however, that manslaughter, committed in a foreign river above the forts, cannot be punished under the 12th section. Indeed to me it is manifest that congress so understood it, because if the terms "seas," "high seas," and "at sea," do not embrace the "rivers, harbors, basins, and bays within the jurisdiction of any particular state," then there is no punishment for many offences committed in those rivers, basins, harbors, and bays out of the jurisdiction of any particular state, which are yet punishable when committed at sea or on land. Thus it is with maiming, in section 13, which is punishable if committed "within any of the places upon land within the sole and exclusive jurisdiction of the United States, or upon the high seas;" so also of the offences specified in sections 10 and 11. The declaring an offence to be piracy, which is done in the 8th section, or robbery, would of itself show that it must be committed on the seas. "The word itself is derived from a Greek word which signifies to pass over the sea, and refers rather to a place than a specific crime." 2 Chit. Crim. Law, 1127; 3 Just. [Inst.] 113. And the crime, both by the laws of England and America, and by the law of nations, is defined to be "robbery, or forcible depredation on the sea, animo furandi." 4 Bl. Comm. 71; U. S. v. Smith, 5 Wheat. [18 U. S.] 153; U. S. v. Furlong, Id. 184; 1 Kent, Comm. 183. In England, the mouths of great rivers without the limits of any county, where the sea ebbs and flows, are considered as part of the sea, and within the admiralty jurisdiction. 2 Hale, [P. C.] 12, 16.

I think it manifest, from what has been said, that the 8th section of the act of 1790, and which declares robbery, when committed on the high seas, or in any river, basin, or bay, without the limits of any particular state, to be piracy, applies only to the various parts of the sea, and not to any internal rivers or waters, whether in our own territories, the states, or foreign states. It may be said that the words of the act, "any river, haven, basin, or bay, without the limits of any particular state,"

would apply to a river and those waters within the interior of our territories, and so they would; and would also apply to those in the interior of any foreign kingdom; yet no person has ever contended that it was to be so construed. This is further illustrated by the act of 15th May, 1820, the 3d section of which provides, that if any person upon the high seas, or upon any open roadstead, or in any haven, basin, or bay, or in any river where the sea ebbs and flows, commit the crime of robbery in and upon any vessel, he shall be adjudged a pirate. This shows the sense of the legislature, as to the parts of a river in which piracy can be committed, that is to say, where the sea ebbs and flows. The courts of the United States have never claimed any sole and exclusive jurisdiction as to the place under the 8th section of the act of 1790, or under that clause of the constitution which declares that the judicial power shall extend to all cases of admiralty and maritime jurisdiction, but, on the contrary, have expressly disclaimed. U. S. v. Bevans, 3 Wheat. [16 U. S.] 386.

I need not cite authorities to show that the seas are not within the sole and exclusive jurisdiction of the United States. The observations made above are intended to show that all places named in the 8th section are parts of the sea, and consequently, as it regarded crimes committed thereon, the United States have no sole and exclusive jurisdiction. If the 8th section does not apply to places within the sole and exclusive jurisdiction of the United States, then its provisions do not apply to crimes committed in the Indian country, as provided by the 25th section of the act of 1834 above cited. To me it is manifest that congress intended to make no distinction in punishment of offences committed on land; and when it provided for the punishment of offences committed in the Indian country, it had the same object in view. Hence it is provided in the 25th section of the act of 1834, that so much of the laws of the United States as provides for the punishment of crimes committed within any place within the sole and exclusive jurisdiction of the United States, shall be in force in the Indian country. The places within the sole and exclusive jurisdiction of the United States are the forts, arsenals, dockyards, and magazines, so often mentioned in the act of 1790 as being places within the sole and exclusive jurisdiction of the United States. In regard to offences committed on the seas, it was thought proper to make special provisions; and as piracy, which is robbery on the seas, is an offence against all nations, and is perhaps by all punished with death, on account of its enormity and the difficulty of suppressing it, it was thought proper to punish it by our Code with death. 1 Kent, [Comm.] 183. The act of 1817, "to provide for the punishment of crimes and

offences committed within the Indian boundaries," contained a provision substantially like that in the 25th section of the act of 1834. After its passage, the supreme court in 1818 decided that robbery committed on land was not punished with death; but otherwise if committed on the sea. U. S. v. Palmer, 3 Wheat. [16 U. S.] 627. Indeed this was admitted by the United States counsel.

I have examined this case more at length than it might seem to require, because my brother judge decided at St. Louis, on application to be admitted to bail, that robbery committed in the Indian country was punishable with death. For the opinions of Judge Catron I have great respect; but the reasoning in his written opinion in this case does not satisfy me, and no authorities are cited. I will here copy that part of Judge Catron's opinion applicable to the point in which I consider the error to consist.

"The 8th section of the act of 1790," says he, "provides that if any person or persons shall commit upon the high seas, or on any river, haven, basin, or bay, out of the jurisdiction of any particular state, murder or robbery, such offender shall be deemed a felon and suffer death. The crime is to be committed, first, on the water, and second, out of the jurisdiction of any particular state. Suppose the crime of murder or robbery had been committed in a bay, or in a river of Florida, within the country belonging to the Creek Indians, after Florida had been acquired by the United States from Spain, then the murderer or robber would have been punishable with death, because the place where the crime was committed was not within the jurisdiction of any particular state, and because it had been committed in a bay or river. The act of 1817, c. 265, (3 Story's Laws, 1644, [3 Stat. 383,]) provides that if any Indian or other person shall, within the United States, and within any town, district, or territory belonging to any nation of Indians, commit any crime, which if committed in any place or district of country under the sole and exclusive jurisdiction of the United States would, by the laws of the United States, be punished with death, the offender, on conviction, shall in like manner be punished with death. In the case supposed of the commission of murder or robbery on the water in the Indian country, it would clearly be a capital felony, committed in 'a place and district of country' under the sole and exclusive jurisdiction of the United States, and be punishable by the 8th section of the act of 1790. The act of 1817 is as broad as it well can be, when it extends the same punishment to the land. It declares if the crimes shall be punishable with death 'in any place or in any district of country,' &c., the offender shall be punished in like manner as if he committed the same crime on the land and in the Indian country."

The judge then proceeds to say that the offence with which the prisoner was charged, robbery, was committed in the Indian country attached to the state of Missouri; that he had confessed the robbery, and that the crime was therefore not bailable.

I will here remark that the 8th section of the act of 1790, recited by the judge, declares that the person who shall commit the offences therein named, among others robbery, "shall be deemed, taken, and adjudged to be a pirate and a felon," and not merely a felon, as set forth by the judge; and that it also enumerates other offences besides murder and robbery, such as piratically and feloniously running away with a vessel, or any goods or merchandise to the value of fifty dollars; and that the act of 1817 is repealed, and that of 1834 substituted.

The judge says:—"In the case supposed, of the commission of murder or robbery on the water in the Indian country, it would clearly be a capital felony, committed in a place and district of country under the sole and exclusive jurisdiction of the United States, and be punishable by the 8th section of the act of 1790."

Now if he means that "any river, harbor, basin, or bay," in the interior of Florida, and to which the admiralty jurisdiction does not extend, is a place enumerated in the 8th section, and in which piracy may be committed (for all the offences in that section specified are declared to be piracies), then I am constrained to dissent. But if, on the contrary, he means that the mouths of the great rivers where the tide ebbs and flows, and the harbors, basins, and bays, within the admiralty jurisdiction, are the places in the 8th section mentioned, and where piracy may be committed, then I am constrained to deny that they are "places under the sole and exclusive jurisdiction of the United States," as to crimes. The reasons and authorities I have already given. In the territories of Florida and Louisiana, and perhaps others, certain laws, including the act of 1790, were declared to be in force. They are of course yet in force in Florida, and what remains of Louisiana, as purchased of France; and I presume in the other territories. Has any one ever heard of a prosecution for piracy committed in the interior waters of these territories, or of any person being hung for robbery, or running away with goods to the amount of fifty dollars? Certainly nothing of the kind ever took place in the territory of Missouri, where the law was in full force, nor have I ever heard of it taking place anywhere.

If, as declared by Lord Coke, the word piracy "refers rather to a place than a species of crime," and if, as I have already shown, the definition of the crime, both by the laws of England and America, and the law of nations, is "robbery" or forcible depredation animo furandi on the seas, it would

look somewhat singular to be punishing persons as pirates for offences committed in our territories two or three thousand miles from any sea; for all the offenses in the 8th section, and many other offences, are declared to be piracies when committed on "any river, harbor, basin, or bay, out of the jurisdiction of any particular state." The offence of larceny (which is included in a robbery) could clearly be punished by the provisions of the 16th section, if committed in any fort, arsenal, dockyard, or magazine, under the sole and exclusive jurisdiction of the United States, and of course could be punished by the act of 1834 if committed in the Indian country; and, according to my brother judge, may also be punished under the 8th section. So we have two laws for the punishment of the same offence, and under each a different punishment. The crime of murder is declared to be punishable when committed in a place within the sole jurisdiction of the United States, and is again declared to be punishable when committed on "any river, harbor, basin, or bay, out of the jurisdiction of any particular state." Now if rivers, harbors, basins, and bays, beyond the jurisdiction of any particular state, are places within the sole and exclusive jurisdiction of the United States, this double enumeration of the places was both idle and mischievous.

Let it be remembered that the act of 1790 was enacted, not for the territories or the Indian country, but was subsequently introduced therein, as far as it was applicable. Now it may well be questioned whether the crime of robbery on the seas, or piracy, can be committed in the Indian country. The place enters essentially into the offence, and an aggravated punishment is annexed to it on that account. It may be likened to robbery on or near the highway, by certain English statutes, to which an aggravated punishment is annexed. The offence could be committed only on or near a highway. 1 Hale's P. C. 535. If we had such an act, and it was declared to be in force in the territories or Indian country, yet if there were no highways, the offence could not be committed there. Here we have the statute of 1790, which provides for the punishment of a great number of different crimes, and is if you please declared to be in force in the Indian country. Among them is robbery on the seas, or in rivers, harbors, basins, or bays, out of the jurisdiction of any particular state, or in other words piracy. If there are no such places in the Indian country, then the offence could not be committed there; or if robbery is there committed on land, it would not be the offence declared in the statute. We have a code of criminal law for the land, that is, for forts, magazines, dockyards, arsenals, &c., which are under the sole and exclusive jurisdiction of the United States. That these are applicable to the Indian country no one questions. We have also a code

of criminal law for the seas. Now, according to the ingenious reasoning of my brother judge, we are to have a part of those intended for the seas transplanted to the Indian country, which gives them two sets of laws on the same subject, and makes different criminal laws for different parts of the same country enacted by the same authority. Thus if robbery be committed in a fort, arsenal, dockyard, or magazine, under the sole and exclusive jurisdiction of the United States, it is punishable, as a larceny, by fine and imprisonment. But if committed in the Indian country, it is to be punished with death. If a person in the forts, arsenals, magazines, and dockyards run off with goods to the amount of fifty dollars, he is punishable by fine and imprisonment. But if he commit the same act in the Indian country, he is punishable with death. But a difficulty will arise, for as both codes are in force in the Indian country, by which shall we be governed? Crimes committed at sea have great and aggravated punishments denounced against them, because committed at sea. This is especially the case in regard to robbery on the sea, or piracy. 1 Kent, [Comm.] 183. And yet we are to punish them in the same manner, and to the same extent, when committed on land. These consequences must all follow, if my brother judge be correct in his opinion.

The act of 1790 was very unskilfully written. In some of its provisions, the words, if literally and strictly taken, go far beyond what could have been the intention of the writer; and the act has in some respects copied too closely the act of 39 Geo. III., without adverting to the difference in our constitutions. In but few of its provisions can it be taken literally. Thus section 8 provides for the punishment of all murders committed by foreigners within a foreign vessel, although upon the high seas; and so also of piracy. So it must also be in regard to piracy and murder committed on any river, &c., for this would lead us to the punishment of murders committed on rivers in the heart of foreign countries by their own citizens or subjects, where it would be absurd to claim jurisdiction. The act must be construed with an eye to the jurisdiction of the United States and the subject-matter, and then the 8th section will be construed not to apply to any place where the United States have not jurisdiction, nor to a place where piracy, from its nature, cannot be committed. U. S. v. Palmer, 3 Wheat. [16 U. S.] 631, 634.

I have referred to and examined the constitution and laws of the United States to show that the places "under the sole and exclusive jurisdiction of the United States," mentioned in the constitution, the act of 1790, and the acts of 1817 and 1824, were the same, and were places purchased by the United States, with the consent of the legislatures of the states in which they might be, for forts, arsenals, magazines, dockyards,

and other needful buildings; and that the high seas, and rivers, harbors, basins, and bays, out of the jurisdiction of any particular state, were not places within the meaning of those acts,. within the sole and exclusive jurisdiction of the United States.

I will now venture a step further. Judge Catron, in his opinion, says:—"In the case supposed of the commission of murder or robbery on the water in the Indian country, it would clearly be a capital felony committed in a place and district of country under the sole and exclusive jurisdiction of the United States, and be punishable by the 8th section of the act of 1790." Now I deny that the Indian country, even technically, either land or water, is under the sole and exclusive jurisdiction of the United States. The United States have not, in any instance within my knowledge, exercised such sole and exclusive jurisdiction. By the acts of 1817 and 1834, above referred to, nothing of the kind is attempted. They both expressly except crimes committed by Indian on Indian, and confine their operation to regulating trade and intercourse, and preserving peace. A sole and exclusive jurisdiction would exclude all Indian laws and regulations, punish crimes committed by Indian on Indian, and regulate and govern property and contracts and the civil and political relations of the inhabitants, Indians and others, in that country. It would be wholly opposed to a self-government by any Indian tribe or nation. This self-government is expressly recognized and secured by several treaties between the United States and Indian tribes in the Indian country attached by the act of 1834 to Arkansas or Missouri District for certain purposes. This may be seen from the treaty with the Choctaws in 1830, and the treaty with the Creeks in 1832, and other Indian treaties. The United States could not, therefore, assume a sole and exclusive jurisdiction over the Indian country without violating their treaties, which treaties are the supreme law of the land. I conclude, therefore, that the Indian country is neither in fact nor in law under the sole and exclusive jurisdiction of the United States. Indeed if congress considered the Indian country as being under the sole and exclusive jurisdiction of the United States, it was wholly unnecessary to extend to that country the laws for the punishment of crimes committed in places under the sole and exclusive jurisdiction of the United States.

---

## Case No. 448.
### ANONYMOUS.
[Hempst. 450.][1]
Circuit Court, D. Arkansas. April, 1845.
COSTS—MARSHAL'S FEES—MILEAGE.